(No. 26036.—<span style="background:black">     </span>
MARCUS C. STEARNS, III, Appellee, *vs.* RICHARD I. STEARNS, II, *et al.*—(HENRY C. STEARNS, Appellant.)

*Opinion filed April 10, 1941.*

ASHCRAFT & ASHCRAFT, (CARROLL J. LORD, and ALAN E. ASHCRAFT, JR., of counsel,) for appellant.

FOLLANSBEE, SHOREY & SCHUPP, (ROBERT W. SCHUPP, GERHARDT S. JERSILD, DAVID K. COCHRANE, LEO WOLF, and RONALD N. BROWN, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The decisive question presented by this appeal is whether Henry C. Stearns is a lawful grandchild within the contemplation of the last will and testament of Marcus C. Stearns, a resident of Cook county, who died on April 8, 1890. Stearns left as his heirs-at-law, his wife, Margarette E. Stearns, and four sons. By his will, executed April 23, 1888, the testator made specific bequests, and devised the remainder of his real and personal estate in trust. Definite sums were provided in the trust for his wife and three of the sons, and annuities for their surviving wives, including the second wife of a divorced son. An annuity for George R. Stearns, the fourth son, was considered "full and ample in view of the advances I have made him and his family and the provisions made in this will for his wife and six children." The ninth clause of the will provided: "To Maria Kingswell Stearns, wife of my son, George R. Stearns, the sum of One Thousand Eight Hundred (1800) per annum, so long as she shall remain the wife or widow of my said son; I also direct my trustees to give the free use of the house No. 29, 35th Street, in the city of Chicago, to said Maria Kingswell Stearns, so

long as she shall remain the wife or widow of my said son; George R. Stearns, * * * This bequest is given upon the express condition that the six children of said Maria K. and George R. Stearns," namely, Marcus, Mary, Margarette, George, Jessie and Roxanna, "shall each have a free home in and at said house as long as they may severally desire the same, and that their mother shall give them all due care and attention." Clause 11 provided annuities for "my six grandchildren," again enumerating the children of George R. Stearns and Maria K. Stearns, and, also, for "my three grandchildren," naming the children of John E. Stearns and his divorced wife. By a subsequent clause, the trustees were directed "to pay to each of my grandsons who shall be of good character and good habits and competent to transact business, the sum of Ten Thousand (10,000) Dollars, upon his attaining the age of twenty-five years; and in like manner to pay to each of my granddaughters at the age of twenty-one years the sum of Five Thousand (5,000) Dollars." The will further directed, at a specified time, "that my estate then remaining in the hands of my said trustees, with all the accumulations thereof, be divided among my lawful grandchildren then living, in equal shares, and in such division the lawful issue of any deceased grandchild then surviving shall take the same share which the deceased grandchild would have received in such division if then living."

The time for distribution of the trust estate having arrived, the plaintiff, Marcus C. Stearns, III, a grandson of the testator, filed a complaint in the superior court of Cook county, seeking the appointment of successor trustees, as the last surviving trustee had died, and an order directing the trustees to complete the trust and distribute the *corpus*. Twelve other grandchildren filed answers admitting the allegations of the complaint. Henry C. Stearns, hereinafter referred to as the defendant, answered that he is a son of George R. Stearns, either born legitimate or sub-

sequently legitimatized, and is, therefore, a lawful grand-child of the testator, entitled to share in the estate with the admitted thirteen lawful grandchildren. Plaintiff replied, denying that defendant was a lawful grandchild. Successor trustees were appointed, and the cause referred to a master in chancery who found that the defendant is not a lawful grandson of the testator, and recommended a decree in accordance with the prayer of the complaint. Defendant's objections and exceptions to the report were overruled and a decree entered in conformity with the report. An appeal prosecuted by the defendant to the Appellate Court for the First District has been transferred to this court, because a freehold is involved.

George R. Stearns and Maria Kingswell Stearns were married in St. James Roman Catholic Church, in Chicago, November 23, 1868, and lived together as husband and wife until April, 1882. The youngest of their six children was born in 1879. The defendant, the son of George R. Stearns and Belle King Ward, a widow, was born on May 9, 1881. In April, 1882, George was discharged from his position, as an employee of his father, Marcus C. Stearns, because of the latter's disapproval of his son's personal conduct. The same month, George Stearns separated from his wife, Maria. The latter continued to reside in their home, described in the will, until her death in 1915, receiving support from the testator, and, after 1890, her trust annuity. After his mother's death, in 1898, George Stearns sent his wife one thousand dollars annually, and paid the expenses of her funeral. During the interim, he went to Pueblo, Colorado, and upon his return to Chicago in 1883, obtained employment as a fireman and resided with Belle Ward and the defendant, who was christened as their son. In 1889, George Stearns left Belle Ward, went to Seattle, Washington, and, so far as the record discloses, did not thereafter live with her. Mrs. Ward then obtained employment as a nurse in the office of Dr.

J. H. Eskridge and entered a medical school. In 1890, she married Dr. Eskridge, and, after being admitted to the practice of medicine, maintained an office with her husband until 1920, when they moved to Texas. Since his death in 1930, Mrs. Eskridge has lived in Monrovia, California. In the meantime, George Stearns returned to Chicago from Seattle in 1891, and resided with his mother until 1897, when he went to Port Arthur, Texas. The defendant lived with his mother and Dr. Eskridge until 1897, and, subsequently, with another family in Chicago until 1900, when he joined his father in Port Arthur. Until his death in 1932, George Stearns lived with defendant in Texas and California.

Qualified witnesses, who testified for plaintiff, had conducted a search of the records in every county and State where either George or Maria was known to have resided until the latter's death, and failed to find a record of a divorce between them. Witnesses called by the defendant testified that George Stearns and Belle Ward established a reputation of marriage among their neighbors who did not, however, know of Maria Stearns and her children. Defendant testified that his mother told him she had married his father in Milwaukee. On the occasion of Belle Eskridge's visits to the defendant while he was living in Texas it appears that his father addressed and introduced her as his former wife. On the other hand, Marcus Stearns, the eldest son of George and Maria Stearns, corroborated by another grandson of the testator, testified to the repute in the Stearns family that Belle Ward was his father's mistress, and defendant his illegitimate son.

Additional evidence requires narration. In two instruments, executed in 1905 and 1919, introduced by defendant, George Stearns referred to defendant as his son. His will, executed in 1930, contained the statement: "I declare that I am a widower and that I have six (6) children," naming the defendant, and his five living children by Maria

Stearns. In two letters written to a brother in May, 1890, introduced in rebuttal, George expressed surprise and appreciation over the will's provisions for "me and mine," astonishment over his own good fortune, and deplored Belle's belief that she was "to blame for the whole matter." Introduced in rebuttal, a letter to the testator, signed "Belle Ward," dated "Sept. 10, —" states that "George and I * * * have done a wrong we can never repair," and refers to the period "after the matter became known." In closing, she wrote: "I bid George good-bye today * * * I am heartily ashamed, and mean to raise the child to be a good and useful man and to live so that he will never have cause to blush for my conduct, and I hope with all my heart that in the future George will do likewise. I am aware that his home can never be now what it might have *been,* but (as I told him) he can make the best of it for the sake of his children." The defendant testified that the writing in this letter is entirely different from, and not at all characteristic of, his mother's handwriting. Abram B. Stratton, recently retired as the general attorney for Armour and Company, having received several written reports daily from Belle Eskridge between 1894 and 1905, while she was a surgeon for the company, and having examined the reports subsequently until 1920, identified the letter as being in her handwriting. In February, 1932, Mrs. Eskridge wrote to Irving Stearns, Jr., requesting "an affidavit to prove that I was never the legal wife of George R. Stearns," in order to clear the title to land in Texas inherited "when I was living with George Stearns as his wife," and "to obtain a pension as the wife of an officer in the Civil War," namely, Dr. J. H. Eskridge. It also appears, that defendant, having filed a claim with the trustees immediately following his father's death, withdrew it upon discovering that a purported decree of divorce used in support of the claim had been "fixed up" by his mother.

Concerning his claim of legitimatization, defendant also testified that in the fall of 1891, or the spring of 1892, he went from Pueblo, Colorado, where he had been visiting, to San Francisco with his father who was then seeking employment as a fireman; that the latter introduced defendant to everyone as his son, and that, after they had lived for two months with a family named Hagen, he, defendant, returned to Pueblo. Defendant's first wife recalled a conversation between defendant and his father in 1903, concerning a trip they had taken to California, and his second wife testified that George Stearns had insisted upon searching for the Hagen family during a visit to San Francisco in 1928.

To obtain a reversal of the decree adjudging that he is not a lawful grandchild of Marcus C. Stearns, deceased, defendant contends that the strong presumption of his legitimacy arising from the fact he is a natural son of George R. Stearns has not been overcome, and that he is, therefore, a lawful grandson of the testator, within the meaning of the will. Here, the testator's bequests to "grandsons" and the trust provisions for "lawful grandchildren" are to legitimate grandchildren. (*Marsh* v. *Field,* 297 Ill. 251.) A presumption of marriage and legitimacy will never be indulged where it affirmatively appears that cohabitation was meretricious in origin and throughout the period when issue was born. (*Gorden* v. *Gorden,* 283 Ill. 182; *Cartwright* v. *McGown,* 121 id. 388.) If one of the parties has a spouse by a former marriage, living and undivorced, the relationship is illicit. (*Cole* v. *Cole,* 153 Ill. 585; *Schmisseur* v. *Beatrie,* 147 id. 210.) A relation illicit in its inception will be presumed to continue illicit, and the burden of proving a subsequent change to a marital status rests upon the party asserting it. (*Sebree* v. *Sebree,* 293 Ill. 228; *Gorden* v. *Gorden, supra.*) This change is not shown by a reputation of marriage, since marital representations are the ordinary means for con-

cealing an improper relationship. (*Cartwright* v. *McGown, supra.*) Reputation, to prove a marriage, must be founded upon general, not divided or singular, opinion. (*Gorden* v. *Gorden, supra.*) Where the parties separate, as did George Stearns and Belle Ward, without an apparent cause, a presumption obtains that the relation was not marital. *Maher* v. *Maher,* 183 Ill. 61; *White* v. *White,* 142 So. (Ala.) 524.

Tested in the light of the foregoing recognized principles of law, the evidence establishes that Henry C. Stearns, the defendant, was born an illegitimate son of George R. Stearns and Belle Ward; that the relationship of his parents never assumed a lawful status, and that the testator was aware of these facts and intentionally excluded defendant from participation in his estate. The testator's knowledge of defendant's illegitimacy appears from the discharge of his son, George, from his employ, the support given George's wife and the children of George and Maria, the letter received from defendant's mother, and George Stearns' surprise that he was remembered in the will. This conclusion is fortified by the will itself which discloses that the testator exercised unusual care to repeatedly name his son's wife, Maria, and their admittedly legitimate children, and not only to provide for them in a manner calculated to protect a family separated from its husband and father, but differently than for the other sons and their families. The ceremonial marriage of George R. Stearns and Maria Kingswell Stearns, and the former's continued residence at home with his wife and children until long after defendant's birth, are uncontroverted facts. Such reputation of marriage between defendants' parents, as obtained, rested upon the community's ignorance of George's marriage to Maria Stearns, and is rebutted by the contrary repute in the Stearns family. The record is devoid of proof that either George or Maria Stearns obtained a divorce, or that the former had any legal grounds therefor,

and plaintiff's contrary evidence precludes a presumption of this prerequisite condition to defendant's legitimacy. In the absence of other than hearsay evidence that defendant's parents were married or divorced, their separation, followed by his mother's marriage to Dr. Eskridge, raises a presumption of unlawful cohabitation. Under such circumstances, mere subsequent acts or declarations of the parties, even if competent, could not establish marriage or legitimacy. Moreover, without discussing them in detail, their tendency is to establish the contrary facts. When all the facts and circumstances are considered, the weight of the evidence is clearly against defendant's contention that he was born legitimate or was subsequently legitimatized by a marriage of his parents.

Defendant insists, further, that even if born illegitimate and not thereafter legitimatized by a marriage of his parents he was, nevertheless, legitimatized in 1891, conformably to the provisions of section 230 of the California Civil Code: "The father of the illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, adopts it as such." Defendant places reliance upon *In re Gird's Estate*, 157 Cal. 534, 108 Pac. 499, where a bachelor, with a permanent home, whose brothers and sisters had never lived with him in California, was held to have a family there for the purpose of the statute. The quoted section was construed to mean that the father must have a settled place of habitation of which he is the head, and that his wife, if he is married, must consent to his action. It is sufficient answer to defendant's contention, that his father, while residing for a brief interval in a stranger's house, did not have in California a home of which he was the head, nor a family; and that his wife's consent will not be presumed, particularly where, upon their return to Chicago, defendant was not introduced to,

nor received into the homes of, George Stearns' wife or his mother.

Complaint is made that the undated letter to the testator, signed "Belle Ward," was not properly authenticated, and that Belle Eskridge's letter to Irving Stearns, Jr., in 1932, was incompetent as hearsay evidence. In our view of the evidence these letters are not material and their admissibility need not be considered. It may be observed, however, that the first letter's execution is fixed by its context as late 1881 or early 1882. The master's determination of the fact of its identification, approved by the chancellor, is supported by ample evidence and will not be disturbed. Whether the second letter would have been competent under other circumstances need not be determined since it was properly received in rebuttal of extensive evidence of a similar nature submitted by defendant. *Gorden* v. *Gorden, supra.*

The decree of the superior court is right, and it is affirmed.

*Decree affirmed.*