(No. 44881.-

PAUL FEDER, Appellee, v. JULIAN J. LUSTER, Exr.,
Appellant.

*Opinion filed March 20, 1973.*

RALPH B. BRODY, of Chicago, for appellant.

NAT M. KAHN, and SMITH and MUNSON, both of Chicago, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The circuit court of Cook County entered a judgment which directed the defendant, Julian J. Luster, as executor of the estate of Samuel Feder, to prepare and file an individual accounting for the rents and profits collected by him from certain real property located in Evanston, Illinois, and to pay the moneys available after such accounting to Betty E. Feder as the trustee of four trusts which had been created for the benefit of her four children. This judgment was affirmed by the appellate

court, with one judge dissenting (2 Ill. App. 3d 28), and we granted the defendant's petition for leave to appeal.

Samuel Feder, the testator, at the time of his death was the sole beneficiary of a land trust under which the trustee, Cosmopolitan National Bank of Chicago (Cosmopolitan) held the legal title to real property at 615-621 Howard Street in Evanston. The trust provided that Feder as beneficiary had a power of direction as to the title of the real estate and had a right to manage it and receive the proceeds from the rental or sale of the property. The right of Feder was declared to be deemed personal property and was to be assignable by him. The trust provided that in the event of death his rights and interests under the trust would pass to his executor or administrator. Upon Samuel Feder's death, the defendant, as the executor of Feder's estate, took possession of the property at 615-621 Howard Street and collected the rents, which rents were the subject of a petition brought by the plaintiff, Paul Feder, in the circuit court of Cook County. The plaintiff, the son of Samuel Feder and the husband of the trustee, Betty E. Feder, filed the petition, asking that the defendant, as executor, be required to account to Betty Feder for the rents and profits from the Howard Street property from the time of the death of Samuel Feder and to distribute to her as trustee all funds which such an accounting might show to be on hand.

At the time the circuit court entered judgment in favor of Paul Feder, the time for filing claims against the estate had expired and taxes against the estate had been paid or provided for.

Feder's will provided, after making certain bequests, that the residue and remainder of his estate was to pass to the Sears Bank and Trust Company (Sears) and Julian J. Luster, the defendant, as co-trustees under two trusts created by the will, Trust A and Trust B. It is only Trust A that is concerned in this litigation.

The will directed that "upon my death" the trustees,

Sears and the defendant, were to convey the real property described in Trust A, that is, the Howard Street property, to Betty E. Feder as trustee, in undivided one-fourth interests. It provided that Betty Feder would hold the four undivided one-fourth interests as trustee for the benefit of her four children.

Upon the death of Samuel Feder, the defendant collected the rents from the Howard Street property and managed it for more than a year and a half while the estate of Samuel Feder was in the course of administration. He then, while the estate was still in probate, obtained an order from the circuit court of Cook County which directed Cosmopolitan to convey the legal title to Sears and to the defendant as trustees under Trust A and, when Cosmopolitan transferred title, Sears and the defendant conveyed the legal title to Betty Feder.

The question presented is whether Betty Feder, as the trustee, was entitled to the income from the concerned property prior to the formal conveyance of title to her from Sears and the defendant. That is, was she entitled to such income from the date of the testator's death, or only from the date of the formal conveyance by Sears and the defendant.

The defendant contends that according to the land-trust agreement with Cosmopolitan, Samuel Feder had only a personal-property interest in the property, but he does acknowledge that Feder did have a power of direction of the title. The defendant's argument is that this personal-property interest in the Howard Street property passed to him as executor. It was this personal-property interest which was producing income for the estate of Feder during the period of the administration of the estate. Until the real-property title was transferred to Sears and the defendant by Cosmopolitan, the argument is, the estate of Feder had only a personal-property interest for rents and income from the Howard Street property. That income, not having been specifically given to anyone under

the will, should be distributed, the defendant says, under the will's residuary clause to the beneficiaries of Trust B. Noting that the will provided that the trustees (Sears and the defendant) were to convey the fee simple title to Betty Feder as trustee, he says that Sears and he did not have a fee simple title to convey until there had been a transfer of title to them from Cosmopolitan. This argument is supported, the defendant claims, by the language in Feder's will that "Trust A shall include only the real estate commonly known as 615-621 Howard Street." By the words "only the real estate" the testator intended that Trust A was to be constituted only of real property and that any personal property, including the rents and income in question from the personal-property interest of Samuel Feder through the land trust, were not to pass to Betty Feder as trustee under Trust A.

The plaintiff says, and correctly, we judge, that the language "Trust A shall include only the real estate commonly known as 615-621 Howard Street" simply is a description of the real estate which was to be the corpus of Trust A. The plaintiff's position is that the intention of the testator, Samuel Feder, was that Betty Feder as the trustee under Trust A was to receive the Howard Street property at the time of his death. He points to the testator's language that "I direct that upon my death, my trustees convey the fee simple title of the real estate described in Trust A as follows: ***." It is argued that the words "upon my death" evidenced the testator's intent that Betty Feder was to become entitled to the property precisely upon the testator's death. The defendant's response is that the phrase "upon my death" is not the language of significance here, and should be regarded as surplusage on the ground that the will of the testator obviously could not be given effect until his death.

The first purpose in construing a will is to determine the testator's intention from the will as a whole and to give it effect, unless doing so would be contrary to law or

public policy. (*Rosenthal v. First National Bank of Chicago, 40 Ill.2d 266; Weber v. Hawkins, 30 Ill.2d 278; Whitmore v. Starks, 17 Ill.2d 202.*) The intention of the testator is to be ascertained by examining the entire will and by giving to the words employed their plain and ordinary meanings. (*Helms v. Darmstatter, 34 Ill.2d 295; In re Estate of Breault, 29 Ill.2d 165.*) Every word, phrase and clause in a will should be given effect, if possible, and where one construction of a will would render a portion of it meaningless and another construction would give effect to all provisions and all language, the construction giving effect to the latter construction will be adopted. *Whitmore v. Starks, 17 Ill.2d 202, 206-207; Carr v. Hermann, 16 Ill.2d 624, 628; Dillman v. Dillman, 409 Ill. 494, 502.*

We consider that, giving effect to the language of the will as a whole, including of course the words "upon my death," the intention of the testator was that Betty Feder as trustee, as of the date of his death, should receive title for the beneficiaries and, accordingly, should be entitled from that date to receive the income from the property. We do not consider it was his intention to have the beneficial interest withheld from the children for the indefinite period required for the formal conveyancing, that is, until there had been a formal conveyance from Cosmopolitan to the defendant and Sears as trustee, and until, further, there had been a conveyance by those trustees to Betty Feder. Here, there was a 1½-year period between the testator's death and the formal conveyances. Under the terms of the land trust, Samuel Feder had a power of direction to deal with the title to the Howard Street property, had the right to manage the real estate and had the right to receive the rentals from it. His rights, according to the trust agreement, were to pass to his executor or administrator and not to his heirs at law. The land-trust agreement was made in March, 1958. Feder executed his will in July, 1964, and made a codicil to it on October 12, 1967. When he was providing for the

testamentary Trust A in favor of Betty Feder's children he was directing to whom he wished the Howard Street property to pass. The only duty given the defendant and Sears as trustees under Trust A was to convey to Betty Feder "upon my death." These trustees had no other obligation or purpose. The testator's contemplation or intent was that the power of direction passing to the defendant under the land trust would be exercised at the testator's death to pass the title to Betty Feder through the defendant and Sears.

The plain object of Trust A was to benefit Betty Feder's children. Considering this, the testator, who in his lifetime had the power of direction as to the property and the right to rentals from it, would hardly have intended an interruption in the passage of title to the property and the right to the rentals from it. We judge he intended that title would pass to Betty Feder "upon [his] death" for the benefit of her children. Taking title, she was entitled to the rents from the property from that time. 6 Page on Wills (Bowe-Parker rev. ed. 1961), sec. 59.16.

The language "upon my death" in the testamentary trust is to be considered as meaning at the time of death. (*Cannon v. Garrett*, 268 *Ill. App.* 18, 21.) That courts will carry out where possible the intent of a testator in this regard is illustrated by *State Bank of Chicago v. Gross*, 344 *Ill. 512, 516.* There the testatrix directed that the net income from a legacy be paid "commencing at my death." This court observed, "This language is plain and unambiguous and needs no construction." We gave effect to the testatrix's intention, saying: "The general rule [then in effect] requiring the payment of interest on pecuniary legacies one year after the death of the testator has no application where the will clearly fixes a different time when such payment shall begin."

The defendant's contention that the words "upon my death" shall be regarded as surplusage must be rejected.

Courts will wherever possible give effect to all the language of a will.

We would note, too, that section 5 of the Principal and Income Act (Ill. Rev. Stat. 1967, ch. 30, par. 163.3) provides: "The legatee or devisee of property specifically bequeathed or devised shall be entitled to the income earned or accrued on the property during the period of administration less expenses chargeable under subsection (1) against the income therefrom, and all expenses in excess of income shall be charged against the property."

That the testamentary direction in favor of Betty Feder for the benefit of the children was a part of the remainder clause is not of significance.

In *In re Estate of Comiskey, 24 Ill. App. 2d 199, 203,* the court held that, although a gift of stock was included in the residuary clause of the will, the gift was a specific bequest. It was said: "The fact that the bequest involving the 1041 shares is a residuary bequest does not preclude it from also being specific in nature." In a resembling situation the Supreme Court of Georgia explained: "[W]here it appears from the will that it was the intent of the testator to make a specific bequest or devise of the property enumerated in the residuary clause, the courts will so construe the clause." *Henderson v. First National Bank of Rome (1939), 189 Ga. 175, 180, 5 S.E.2d 636, 639;* see also 128 A.L.R. 816, 823.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*