RAYMOND P. FISCHER *et al.*, Successor Trustees, *et al.*, Petitioners-Appellees, v. SUSAN M. LaFAVE *et al.*, Respondents-Appellees (Scott G. Schuttler, Respondent-Appellant).

Second District   No. 2—88—0679

Opinion filed August 30, 1989.—Rehearing denied October 13, 1989.

Roger A. Ritzman, of Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton, for appellant.

Harold F. Tuber, of Laff & Tuber, Ltd., Marvin S. Berz, Nathan N. Kessler, and Ralph E. Jacobson, all of Chicago, for appellees.

W. Thomas Powell and Kevin William Bloese, both of Vescelus, Powell & Stock, of Wheaton, guardian *ad litem.*

JUSTICE LINDBERG delivered the opinion of the court:

Petitioners are successor cotrustees of four trusts created by the late Peter Schuttler (Peter) and his wife, the late Martha Braun Schuttler (Martha), who were each the settlor of separate testamentary and *inter vivos* trusts. Respondents-appellees are all beneficiaries or potential beneficiaries of the trusts. Petitioners brought this action seeking instructions regarding whether respondent-appellant Scott G. Schuttler (Scott) is entitled to participate in the distribution of the in-

come and the principal of the trusts.

The trial court entered an uncontested order that Scott is entitled to participate in the distribution of the income and the principal of Martha's testamentary trust. As of the date of the filing of the notice of appeal, it does not appear that the court had disposed of the question with regard to Martha's *inter vivos* trust, so that claim may still be pending in the circuit court.

The trial court entered the three-page order which is the subject of this appeal on June 20, 1988. The court ordered that Scott and anyone claiming through him "be excluded from participation in the distribution of income and the principal arising out of" Peter's testamentary and *inter vivos* trusts. On that date the trial court also ordered:

"(1) said three page order entered this date is a final order;

(2) there is no just reason for delaying enforcement or appeal."

The case at bar is Scott's appeal from the final judgment regarding Peter's trusts. 107 Ill. 2d R. 304(a).

Peter executed a will dated December 21, 1939, and a codicil dated January 28, 1941. The provisions of the will establishing the testamentary trust included:

"(d) Said trustees shall divide the trust estate into three equal shares or portions ***. Said portions of the trust estate shall be dealt with and disposed of as follows:
***

(2) Said trustees shall expend and disburse the net income from the second portion of my trust estate *** for the benefit of my son, Peter Schuttler, Jr., for and during the term of his natural life. ***

From and after the death of my said son *** the net income from the second portion of my trust estate shall be paid to my said grand-children, PETER SCHUTTLER V., JOAN SCHUTTLER, and BALLARD SCHUTTLER, and to their lawful issue them surviving ***.

(3) *** From and after the time when the youngest of my said grand-children living shall have attained the age of twenty-five years, the net income from the third portion of my trust estate shall be paid to my said grand-children PETER SCHUTTLER V., JOAN SCHUTTLER and BALLARD SCHUTTLER, and to their lawful issue them surviving ***.

(f) The trust hereby created shall terminate twenty (20) years after the death of the survivor of my wife, Martha Braun

18

Schuttler, my son, Peter Schuttler, Jr., and my grand-children Peter Schuttler V., Joan Schuttler, and Ballard Schuttler; and the trustees shall thereupon transfer, pay over, deliver and convey said trust estate together with all accumulations and undistributed income to the lawful issue of my grand-children, Peter Schuttler V., Joan Schuttler and Ballard Schuttler ***."

Peter executed a trust Indenture creating an *inter vivos* trust on December 26, 1940. Among the terms of this *inter vivos* trust were:

"3. (a) From and after the death of the said son of Settlor the net income from said first share of said trust estate shall be paid to the said grandchildren of the Settlor, Peter Schuttler V, Joan Schuttler and Ballard Schuttler, and to their lawful issue them surviving ***.

(b) *** From and after the time when the youngest of said grandchildren living shall have attained the age of twenty-five years the net income from the said second share of said trust estate shall be paid to said grandchildren, Peter Schuttler V, Joan Schuttler and Ballard Schuttler, and to their lawful issue them surviving ***.

* * *

5. The trust hereby created shall terminate twenty years after the death of the survivor of said Martha B. Schuttler, said Peter Schuttler, Jr. and said Peter Schuttler V, Joan Schuttler and Ballard Schuttler, and the Trustees shall thereupon transfer, pay over, deliver and convey said trust estate, together with all accumulations and undistributed income, to the lawful issue of said grandchildren of the Settlor, Peter Schuttler V, Joan Schuttler and Ballard Schuttler *** and in default of such issue to the heirs-at-law of the Settlor, except the Settlor, as determined by the law of Illinois in effect at the date of such distribution."

Peter died on May 12, 1941, and Martha died on April 25, 1963. In 1976, when Scott G. Schuttler was 18 years old, Ballard Schuttler (Ballard) adopted him. Ballard died on August 20, 1986.

The question in the trial court was, and now in this court is, whether Scott as the adopted son of Ballard is the "lawful issue" of Ballard, as that phrase is used in Peter's trusts. If so, Scott is entitled to participate in the distribution of the income and the principal of those trusts along with the other beneficiaries. Otherwise, he is not entitled to participate in the distribution of the income and the principal of those trusts. The trial court found that Scott was not the "lawful issue" of Ballard, as that phrase is used in Peter's trusts, and

therefore is "excluded from participation in the distribution of income and the principal arising out of" Peter's trusts. We affirm.

■■ Resolution of the issue in this case requires the construction of provisions of a testamentary trust created by Peter's will and an *inter vivos* trust created by Peter's trust indenture. The same rules of construction apply to both the will and the trust indenture. (*Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 3-4, 513 N.E.2d 833, 834.) The object in construing a will or trust is to ascertain the intent of the testator or settlor and, so long as that intention is not contrary to public policy, to give effect to it. (*Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 3, 513 N.E.2d 833, 834; *Ford v. Newman* (1979), 77 Ill. 2d 335, 338, 396 N.E.2d 539, 540; *In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910, 913, 446 N.E.2d 887, 889-90.) That intent must be determined, insofar as it is possible, from the terms of the instrument, and where the terms are clear a court may not consider surrounding circumstances to vary the intention expressed. (*In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910, 913, 446 N.E.2d 887, 890.) A testator or settlor is presumed to have known the law in force at the time the instrument was drafted and to have drafted it in conformity with that law, so the state of the law when the instrument was drafted is one of the circumstances that can be considered in determining the testator's or settlor's intent. (*In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910, 913, 446 N.E.2d 887, 890.) With respect to the testamentary trust, a will and all codicils must be read together as one instrument of the date of execution of the last codicil. *Knight v. Bardwell* (1965), 32 Ill. 2d 172, 175, 205 N.E.2d 249, 251.

The trust indenture was executed on December 26, 1940, and the codicil to Peter's will was executed on January 28, 1941. Those then are the dates on which Peter's intent with respect to the phrase "lawful issue" must be ascertained.

■■ We find that our supreme court's opinion in *Ford v. Newman* (1979), 77 Ill. 2d 335, 396 N.E.2d 539, is controlling. In that case the question was whether a settlor intended to include adopted children in the term "lawful issue" used in an irrevocable *inter vivos* trust executed on December 31, 1941. (*Ford v. Newman* (1979), 77 Ill. 2d 335, 337-38, 396 N.E.2d 539, 540.) The court stated:

> "In the case at bar, the settlor did not expressly refer to adoptees in the instrument. She did, however, with the aid of counsel, utilize the term 'lawful issue,' to refer to the issue of her two sons. We must examine how, on the date of execution, the law defined 'lawful issue' as the settlor employed that

term." (*Ford v. Newman* (1979), 77 Ill. 2d 335, 339, 396 N.E.2d 539, 540.)

As relevant to the case at bar, the supreme court resolved this question as follows:

"[In 1941], the following statute was in effect in Illinois:

'A child lawfully adopted is deemed a descendant of the adopting parent for purposes of inheritance, except that the adopted child shall not take property from the lineal or collateral kindred of the adopting parent per stirpes or property expressly limited to the body of the adopting parent.' (Ill. Rev. Stat. 1941, ch. 3, par. 165.)

See *Miller v. Wick* (1924), 311 Ill. 269[, 142 N.E. 490].

Under the law of [Illinois], adopted children were deemed not to be included as 'lawful issue' of the settlor's sons within the trust provision in this case. Thus, the legal meaning attributed to the language used served to exclude adoptees, absent other evidence of a contrary intention." (*Ford v. Newman* (1979), 77 Ill. 2d 335, 340, 396 N.E.2d 539, 541.)

As in *Ford*, there is no evidence for a contrary intention on Peter's part, Scott having been adopted by Ballard more than 35 years after the instruments were drafted and there being no suggestion in the record that any of Peter's grandchildren had, prior to December 26, 1940, and January 28, 1941, adopted any children. See *Ford v. Newman* (1979), 77 Ill. 2d 335, 340-41, 396 N.E.2d 539, 541.

Scott does not make any argument that would distinguish the instant case from *Ford*. He does not suggest any manner in which the law might have changed between December 26, 1940, and December 31, 1941, that would mandate a different result in the case at bar. He does note that the appellate court case in *Ford* (*Ford v. Newman* (1978), 64 Ill. App. 3d 528, 381 N.E.2d 392) and several other cases opposed to his position were decided after Peter's death and argues that "[r]espondents' reliance on such cases overlooks the fact that those opinions were not in existence when the Trusts were executed." This argument is premised upon a fundamental misinterpretation of the cases which has also been made in at least one appellate court opinion, *Chicago Title & Trust Co. v. Vance* (1988), 175 Ill. App. 3d 600, 606, 529 N.E.2d 1134, 1137.

Scott's mistake is in treating the definitions of the terms "issue," "lawful issue," and the like in the cases as statements by the courts of the law on the date of the cases' decisions. This ignores the issues before those courts, which involved the legal meaning of the terms construed at the time instruments were executed on some date in the

past. Thus, the cases Scott seeks to distinguish as not applying to the 1940 *inter vivos* trust and the 1941 will at bar decided the meaning of "lawful issue" in 1941 (*Ford v. Newman* (1978), 64 Ill. App. 3d 528, 533, 381 N.E.2d 392, 397, *aff'd* (1979), 77 Ill. 2d 335, 396 N.E.2d 539); the meaning of, *inter alia*, "issue" in 1932 (*In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910, 912-14, 446 N.E.2d 887, 889-90); the meaning of "lawful issue" in 1928 (*Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 128, 163 N.E.2d 523, 526); the meaning of, *inter alia*, "issue" in 1914 (*Stewart v. Lafferty* (1957), 12 Ill. 2d 224, 227-28, 145 N.E.2d 640, 642-43); and the effect of a 1955 amendment to the Probate Act on the interpretation of instruments executed both before and after September 1, 1955, that used the terms, *inter alia*, "issue," "lawful issue," and "issue of their body" (*Wielert v. Larson* (1980), 84 Ill. App. 3d 151, 153-56, 404 N.E.2d 1111, 1113-15). To simply note that these cases were all decided after the execution of the codicil and trust, as Scott does, is insufficient to distinguish them given the precise issues they were deciding.

Scott cites *Chicago Title & Trust Co. v. Vance* (1988), 175 Ill. App. 3d 600, 529 N.E.2d 1134, in support of his argument on this point. In *Vance* the court stated:

> "It is not necessary for us to decide the merits of the competing arguments relating to these cases because they were decided by our supreme court *after Morris S. Rosenwald executed his will* [in 1921] *and codicil* [on January 23 1924]. Our review is limited to the law at the time the will and codicil were executed." (*Chicago Title & Trust Co. v. Vance* (1988), 175 Ill. App. 3d 600, 606, 529 N.E.2d 1134, 1137.)

This treatment of the cases the *Vance* court was distinguishing was inadequate as, like the cases cited by Scott, the relevant portions of those cases were determining the legal meaning of words on a date other than that of the decision. Three of the opinions are quite explicit on this point, deciding the meaning of "issue" on May 26, 1873 (*Orme v. Northern Trust Co.* (1962), 25 Ill. 2d 151, 155, 163-64, 183 N.E.2d 505, 507, 512); of "lawful issue" in 1941 (*Ford v. Newman* (1979), 77 Ill. 2d 335, 339-40, 396 N.E.2d 539, 540-41); and of "lawful issue" in 1928 (*Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 128, 163 N.E.2d 523, 526). The fourth case distinguished in this way, although not explicit on the date for which it was defining the terms, determined the intent of a testator who died in October of 1910 in part by construing the term "lawful issue" contained in a testamentary trust created by the testator's

will. (*Miller v. Wick* (1924), 311 Ill. 269, 273-77, 142 N.E. 490, 490-93.) It therefore determined what a testator meant by the term "lawful issue" in a will drafted before October of 1910, and so was not adequately distinguished when the *Vance* court merely noted that the date of the decision was after that of the execution of the codicil. See *Chicago Title & Trust Co. v. Vance* (1988), 175 Ill. App. 3d 600, 606, 529 N.E.2d 1134, 1137.

We granted a motion to cite additional authority filed by Scott. The additional authority is *In re Estate of Dawson* (1988), 168 Ill. App. 3d 391, 522 N.E.2d 770. *Dawson* interpreted the terms "child" and "heir-at-law," rather than "issue" or "lawful issue," in a trust executed in 1928. In light of the far greater similarity of the facts in our supreme court's case of *Ford v. Newman* (1979), 77 Ill. 2d 335, 396 N.E.2d 539, on which we have relied, *Dawson* is of little value as authority in the case at bar.

We also note that the *Dawson* court made an error in case interpretation similar to those made by Scott and the *Vance* court. In *Dawson* the court states:

"We do not believe that *Belfield v. Findlay* (1945), 389 Ill. 526, 60 N.E.2d 403, controls here, because a testator is presumed to make his trust in view of the law in existence at the time the instrument was created. [Citations.] Since *Belfield* was decided many years after the trust was created and even after Walter had died, we cannot presume that Walter had *Belfield* in mind when he prepared his trust." (*In re Estate of Dawson* (1988), 168 Ill. App. 3d 391, 396, 522 N.E.2d 770, 773.)

However, *Belfield* construed language in a will in accordance with the adoption statute in effect in 1916 when the will was executed (*Belfield v. Findlay* (1945), 389 Ill. 526, 532, 60 N.E.2d 403, 406), which appears to have been the same as the relevant statute in effect in 1928 when the trust in *Dawson* was executed. (Compare *In re Estate of Dawson* (1988), 168 Ill. App. 3d 391, 396, 522 N.E.2d 770, 773, with *Belfield v. Findlay* (1945), 389 Ill. 526, 532-33, 60 N.E.2d 403, 406. See also Ill. Ann. Stat., ch. 110½, Appendix, ch. 3, par. 14, Historical Note, at 321 (Smith-Hurd 1978).) It was thus not sufficient to note *Belfield*'s date of decision to distinguish it from the facts of *Dawson*.

Scott argues that Peter intended that the term "lawful issue" be construed under the law at the time of distribution rather than that in effect when the instruments were executed. With respect to the testamentary trust he contends that *Butterfield v. Sawyer* (1900), 187 Ill. 598, 58 N.E. 602, mandates this result. That case construed the term "heir" as used in a deed, and so is very different from the case at

bar. Scott, moreover, has not explained how, if his interpretation of *Butterfield v. Sawyer* is correct, it could be reconciled with all of the more recent Illinois Supreme Court and appellate court cases interpreting a will or a trust in accordance with the intent of its testator or its settlor at the time of its execution. (See, *e.g., Ford v. Newman* (1979), 77 Ill. 2d 335, 396 N.E.2d 539; *In re Estate of Hughlett* (1983), 113 Ill. App. 3d 910, 446 N.E.2d 887.) Given our supreme court's case of *Ford v. Newman* (1979), 77 Ill. 2d 335, 396 N.E.2d 539, which is indistinguishable from the case at bar, we will not adopt the position Scott urges on the basis of *Butterfield v. Sawyer*.

With respect to the *inter vivos* trust, Scott finds evidence that Peter intended that the term "lawful issue" be construed in conformity with the law at the time of distribution in the trust's provision that, on termination of the trust, the trust estate be distributed to:

> "[T]he lawful issue of said grandchildren of the Settlor *** and in default of such issue to the heirs-at-law of the Settlor, except the Settlor, as determined by the law in Illinois in effect at the date of such distribution."

In fact, this provision weakens Scott's position. From this provision it can be inferred that Peter both knew that the law could change and knew how to express the intention that the law in effect at the time of distribution determine membership in a class of beneficiaries. He did so with respect to the class of contingent beneficiaries, his heirs-at-law, who are to take in default of lawful issue of his grandchildren on termination of the *inter vivos* trust. That he did not specify that the term "lawful issue" be interpreted in accordance with the law in effect at the time of distribution of income and principal is, under these circumstances, indicative of an intent not to have the law at the time of distribution be applied in construing that term.

Scott also seems to suggest that Peter may not have had any intention with respect to adopted children of his grandchildren when he used the term "lawful issue" in his testamentary and *inter vivos* trusts. If so, Scott argues that "public policy dictates that" Scott "be included in the class 'lawful issue.'" We need not address this argument because we have resolved this case based on a determination of Peter's actual intent. *Ford v. Newman* (1979), 77 Ill. 2d 335, 338, 396 N.E.2d 539, 540.

The judgment of the circuit court is affirmed.

Affirmed.

REINHARD and INGLIS, JJ., concur.