CONTINENTAL BANK, N.A., *et al.*, Plaintiffs-Appellees. v. NORMA N. HERGUTH *et al.*, Defendants-Appellants (Harold J. Neubrand *et al.*, Defendants-Appellees).

Second District    No. 2—92—0806

Opinion filed July 29, 1993.—Rehearing denied August 27, 1993.

INGLIS, P.J., dissenting.

James W. Hitzeman, of Sidley & Austin, of Chicago (James J. Carroll, of counsel), for appellants.

Samuel W. Witwer, Jr., and Brian M. Waldron, both of Witwer, Burlage, Poltrock & Giampietro, and John T. Brooks, Christopher W. Zibart, Cathryn Ruggeri, and James R. Hellige, all of Hopkins & Sutter (William P. Sutter, of counsel), both of Chicago, for appellees.

Franklin W. Nitikman and Roger W. Wenthe, both of McDermott, Will & Emery, of Chicago, for *amicus curiae.*

JUSTICE McLAREN delivered the opinion of the court:

This appeal is from an order of the circuit court of Winnebago County in an action for the construction of a trust. The trial court held that both the adopted son of one of the settlor's grandsons (the adopted person) and the illegitimate son of that same grandson's other adopted son (the illegitimate person) were "lawful descendants" under the trust. On appeal, the natural born beneficiaries of the trust (the natural borns) argue first that the settlor's actual intent was to exclude adopted and illegitimate heirs from taking under the trust. Secondly, they argue that the trial court violated constitutional mandates in its application to this case of a 1989 statute enlarging a presumption that adopteds take as natural born children unless the terms of the instrument in question manifest an opposite intent by clear and convincing evidence. Ill. Rev. Stat. 1991, ch. 110½, par. 2—4(f).

The trust at issue in this case was executed on January 23, 1926. At that time, all of the settlor's children and grandchildren were natural born. The settlor reserved the right to the trust income for his life, and after his death his wife and his four children were each to receive 20% of the income. Each child's share of income was to be paid to that child's "lawful descendants" when the child passed away. The trust is to extinguish after the death of the last to die of the settlor's widow, his four children and his four grandchildren alive in 1926. When the trust terminates, the corpus is to be distributed "among the lawful descendants of the grantor *** then living, *per stirpes.*"

In order for the reader to understand why the trustees brought the present suit, we must give an overview of Illinois law concerning

the inheritance rights of adopted persons. The Illinois adoption statute in force at the time the settlor executed his trust stated:

> "A child so adopted shall be deemed, for the purposes of inheritance by such child, *** the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation." (Ill. Rev. Stat. 1925, ch. 4, par. 5.)

Our supreme court similarly stated in 1925:

> "When provision is made in a will for the child of some person other than the testator, an adopted child is not included unless there is language in the will or circumstances surrounding the testator at the time he made the will which make it clear that the adopted child was intended to be included." *Smith v. Thomas* (1925), 317 Ill. 150, 158.

Thus, at the time the settlor executed the trust, adopted persons were deemed to be excluded from inheriting from persons other than their adoptive parents unless an intent to include the adopted persons was clear. This legal pronouncement, known as the stranger-to-the-adoption rule, was statutorily modified in 1955 when the General Assembly passed a law which stated:

> "For the purpose of determining the property rights of any person under any written instrument executed *on or after September 1, 1955,* an adopted child is deemed a natural child unless the contrary intent plainly appears by the terms thereof." (Emphasis added.) (Ill. Rev. Stat. 1955, ch. 3, par. 165.)

At that point in time, the legal pronouncement was altered as to the inheritance rights of adopted persons, regarding the instruments executed *after* September 1, 1955.

Later, in 1989, the General Assembly passed legislation altering the presumption to be applied to pre-1955 instruments. The new provision of the Probate Act stated:

> "After September 30, 1989, a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument executed *before* September 1, 1955, unless one or more of the following conditions applies:
>
> (1) The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110½, par. 2—4(f)(1).)

Thus, late in 1989, if an instrument executed *at any time* was unclear on the rights of adopteds to take under the instrument, the presumption in favor of adopteds would apply.

Following enactment of the 1989 statute, attorneys for the adopted and illegitimate persons contacted the trustees of the trust and requested that the adopted and illegitimate persons receive a share of the trust's income. The trustees had, after the death of the adoptive parent, refused to pay the adoptive parent's share to his adopted son and illegitimate grandson. The trustees then brought the present suit for construction of the trust to determine the rights of the adopted and illegitimate persons.

The trial court found that both the adopted and illegitimate persons were "lawful descendants" of the settlor. The nonadopted, nonillegitimate (natural borns) filed a timely appeal.

In this court, the natural borns argue: (1) the settlor's use of the terms "lawful" and "descendents" and the trust's provision for *per stirpes* distribution constitute clear proof that the settlor intended to exclude adopteds and illegitimates; (2) the trial judge erroneously applied the principles of *Trimble v. Gordon* (1977), 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459, and *Reed v. Campbell* (1986), 476 U.S. 852, 90 L. Ed. 2d 858, 106 S. Ct. 2234, to a situation involving testate succession; and (3) the trial court's misapplication of the 1989 statute violates both the doctrine of separation of powers and the due process rights of the settlor and the natural borns.

The adopted and illegitimate persons claim: (1) the term "descendants" did not have a clear and uniform meaning in 1926; (2) a *per stirpes* distribution does not establish an intent to exclude adopteds; (3) the 1989 statute's presumption in favor of adopteds applies; (4) the trial court correctly applied *Trimble* and *Reed* to avoid asymmetrical discrimination against adopteds and illegitimates; (5) the trial court did not violate the natural borns' or the settlor's constitutional rights; and (6) the term "lawful" does not exclude illegitimates.

When construing a trust or a will, a court is to give effect to the intent of the settlor or testator, if that intent is not contrary to public policy. (*Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 3.) The same rules of construction applicable to wills apply to trusts. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513.) Moreover, the settlor's intent is to be determined as of the time the trust was executed (*Button v. Elmhurst National Bank* (1988), 169 Ill. App. 3d 28, 40), and the settlor is presumed to have known the then-existing law concerning the disposition of his property when he executed the trust. (*Sennot v. Collet-Oser*

(1976), 36 Ill. App. 3d 928, 933.) When the terms used in a trust are plain and possess a clear meaning, the plain intention will prevail over a presumed intention. *Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 971.

### RIGHTS OF ADOPTEDS

We address first the issue of adopteds' rights to take under the trust, since if adopteds are excluded, so too are their illegitimate offspring under a *per stirpes* distribution. This issue turns on whether the use of the term "descendants" and the use of a *per stirpes* method of distribution excluded adopteds in 1926.

#### 1. "DESCENDANTS"

The parties' briefs make much of the court's application of differing presumptions in deciding this issue. We believe it is helpful to set out the steps we will follow on this question:

1. The court looks at the law in effect in 1926, through the prism of the presumption in the 1989 statute, to determine if the terms were then so unambiguously defined that they provide clear and convincing proof of an intent to exclude adopteds.

2. If the terms were so clearly defined in 1926, the court applies those definitions.

3. If the terms were not so clearly defined in 1926, the court applies the presumption existing at the time of the court's decision, *i.e.*, the presumption in the 1989 statute.

In a series of cases involving virtually identical language and trusts, our supreme court and this court have had no difficulty in ascertaining a settlor's actual intent. (*Stewart v. Lafferty* (1957), 12 Ill. 2d 224; *Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124; *Ford v. Newman* (1979), 77 Ill. 2d 335; *Hale v. Hale* (1925), 237 Ill. App. 410; *Fischer v. LaFave* (1989), 188 Ill. App. 3d 16, *appeal denied* (1990), 129 Ill. 2d 563.) An examination of the trust reveals that the settlor unmistakably evidenced his intent to limit the class of beneficiaries to his natural born progeny. First, he employed the term "descendants," which in 1926 had an established legal meaning that encompassed only blood offspring. Second, he provided a method of distribution—*per stirpes*—which in 1926 automatically disqualified adopted persons. As in this case, when actual intent is evident, all presumptions, statutory or otherwise, are inapplicable. Here, the settlor manifested his actual intent by using terms which

were clearly defined and with settled meaning to limit the class of eligible takers to his blood offspring.

█ "Descendants" is a word which had a definite and certain meaning under the Illinois law when the settlor created his trust in 1926. The legal meaning of descendants was first established by our supreme court in *Bates v. Gillett*, 36 years before the settlor executed his trust. (*Bates v. Gillett* (1890), 132 Ill. 287.) There, our supreme court held that a descendant is a person "who is descended from another,—that is, one who proceeds from the body of another." (*Bates*, 132 Ill. at 297.) It is coextensive with issue, but does not embrace others not of issue. (*Bates*, 132 Ill. at 297.) The court added that "descendant" is a good term of description and that the foregoing meaning is the ordinary meaning applied to the word "descendants," not only by the profession but by the laity, *i.e.*, even laymen would understand without edification from legal counsel that "descendants" did not include adopteds.

In *Rasmusson v. Unknown Wife of Hoge* (1920), 293 Ill. 101, 107, decided six years before the settlor executed his trust, the supreme court cited *Bates v. Gillett* and reiterated its definition that "descendants" is a broader term than children and includes all lineal heirs in the descending line from the person or all who proceed from his body. In 1925, the year before the settlor here executed his trust, the appellate court reconfirmed the definition and meaning of "descendant" in *Hale v. Hale* (1925), 237 Ill. App. 410, 413. The appellate court observed that the testator did not use the word "children" or "heirs," which arguably might have included adopteds, but rather used the word "descendants," thereby indicating an intention to exclude those who are not descendants of a deceased beneficiary even though such deceased beneficiary might leave surviving heirs who had the legal status of children.

Our supreme court in *Continental Illinois National Bank & Trust Co. v. Clancy* stated:

> "The term 'issue' was then [in 1928] synonymous with 'descendants' and meant those descending or issuing out of the stock or blood. It did not include strangers to the blood." (*Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124, 128.)

The supreme court held that an adopted grandchild could not be a beneficiary of a 1928 trust, a trust made just two years after the trust in this case.

The Appellate Court, Second District, in *Wielert v. Larson* (1980), 84 Ill. App. 3d 151, reviewing the effect of the 1955 Probate Act stated:

> "First, the ordinary definition of the word 'descendant' or 'issue' or the meaning of phrases such as 'issue of their bodies' or 'heirs of their bodies' have always meant and still continue to mean in their ordinary usage those descending or issuing out of the stock or blood. In their ordinary meaning these words or phrases have never included adopted children." *Wielert*, 84 Ill. App. 3d at 154.

The court continued and pointed out that legislation in 1955 *changed the definition* of "descendants" by declaring that the 1955 enactment altered the term "descendant" by stating that a "child lawfully adopted is deemed a descendant." (Ill. Rev. Stat. 1955, ch. 3, par. 165; *Wielert*, 84 Ill. App. 3d at 153.) The court then stated:

> "But it is equally clear that by the 1955 amendment to the Probate Act (Ill. Rev. Stat. 1955, ch. 3, par. 165) the legislature has continued to *broaden the definition* of the word 'descendant' as used for inheritance purposes *beyond that of its ordinary meaning* \*\*\*." (Emphasis added.) *Wielert*, 84 Ill. App. 3d at 154.

In its ordinary meaning, "descendant" never included adopted children. Hence, the settlor's intent is clear when the settlor used the term "descendants," because in 1926 and prior to 1955 "descendants" was both legally and ordinarily defined as excluding adopteds.

The dissent implies that in order for the appellants to have sustained their burden which the dissent has imposed, the settlor was required to include words somewhere within the trust document to the effect "when I say descendant I do not mean adopteds." Such a statement would be required post-1955 but not pre-1955. Ironically, based upon the law in existence at the time of the execution of the document, such language would have been deemed superfluous and would have raised doubts as to the clear intent of the testator because it would raise the inference that the settlor did not understand either the ordinary or the legal definition of the term "descendants." Having determined that there was no ambiguity in the term "descendants," we determine the settlor's clear intent was to exclude adopteds.

Insofar as the *per stirpes* issue is concerned, we believe that when one interprets *per stirpes in pari materia* to the term "descendants" it is clear that, based upon the law at the time the document

was executed, adopteds were excluded and they could not inherit by representation. *Belfield v. Findlay* (1945), 389 Ill. 526.

## RIGHTS OF ILLEGITIMATES

Previously, we stated that illegitimates do not take because the illegitimate in this case could only take through the adopted person. However, assuming *arguendo* the adopted would take under this trust, we still determine the illegitimate's right to take also fails based upon the following rationale.

■ The natural borns argue that the settlor's use of the term "lawful" before the word "descendants" shows his intent to prohibit illegitimate descendants from taking under the trust. Again, we must look at the state of the law in 1926 to determine whether the term "lawful" meant "legitimate." It is important to note, however, that the 1989 statute applies only to adopteds, not to illegitimates. Thus, when examining what the term "lawful" meant in 1926, we do not look through the prism of a presumption requiring clear and convincing proof. We look to see only what the "plain and ordinary" meaning of the term "lawful" was in 1926. (*Feder v. Luster* (1973), 54 Ill. 2d 6, 11.) We find that, in 1926, the term "lawful" ordinarily meant "legitimate."

In *Marsh v. Field* (1921), 297 Ill. 251, our supreme court stated, "obviously, [the term] 'leaving lawful issue' cannot include illegitimates." (*Marsh*, 297 Ill. at 255.) The court then explained that both the terms "issue" and "lawful issue" ordinarily meant legitimate issue. (*Marsh*, 297 Ill. at 257.) Similarly, the court in 1920 stated:

> "It is a rule of construction that *prima facie* the word 'child' or 'children,' when used in a statute, will or deed, means legitimate child or children, and will not be extended, by implication, to embrace illegitimate children unless such construction is necessary to carry into effect the manifest purpose of the legislature, the testator or the grantor." *Murrell v. Industrial Comm'n* (1920), 291 Ill. 334, 336, *overruled by Yellow Cab Co. v. Industrial Comm'n* (1969), 42 Ill. 2d 226.

In *Stearns v. Stearns* (1941), 376 Ill. 283, the court held that a "testator's bequests to 'grandsons' and the trust provisions for 'lawful grandchildren' [were] to legitimate grandchildren." (*Stearns*, 376 Ill. at 289.) The court noted that its conclusion was supported by circumstances surrounding the execution of the 1888 will and its testamentary trust. (*Stearns*, 376 Ill. at 290-91.) For example, the testator took great care when drafting his will to name only his legitimate

grandchildren, even though he knew of his illegitimate grandson's existence. *Stearns*, 376 Ill. at 290.

Finally, as late as 1991, the court in *Harris Trust & Savings Bank v. Donovan* (1991), 145 Ill. 2d 166, 173, held that the term "lawful" meant "legitimate" where a settlor in his 1982 trust defined "children" and "descendants" as "only lawful blood children." The court also noted that its construction of the word "lawful" as meaning "legitimate" was in line with other States' decisions. *Donovan*, 145 Ill. 2d at 173.

We thus conclude that the term "lawful descendants" meant legitimate descendants in 1926. We also find that the illegitimate person's attempts to explain away the language in *Marsh, Stearns* and *Donovan* are unpersuasive, in part because we are not viewing the law in 1926 in light of a presumption requiring clear and convincing proof of the settlor's intent. Accordingly, the illegitimate person here may not share in the trust.

Having determined that neither adopteds nor illegitimates are entitled to take under the trust agreement, the constitutional issues raised by defendants need not be decided by this court. *People v. Rogers* (1989), 133 Ill. 2d 1, 8; *In re Harrison* (1983), 120 Ill. App. 3d 108, 111.

In sum, we reverse the trial court's judgment finding that the adopted person and the illegitimate person may take under the terms of the trust.

Reversed.

QUETSCH, J., concurs.

PRESIDING JUSTICE INGLIS, dissenting:

I respectfully dissent from that portion of the majority opinion prohibiting adopteds from taking under the trust. In my view, the 1989 statute requiring clear and convincing evidence of an intent to exclude adopteds in an instrument executed at any time mandates that the adopteds share in the trust in this case.

I agree that the term "descendants" *ordinarily* meant only blood kin in 1926, when the trust was executed. If we were construing the trust under normal circumstances, with words to be given their "plain and ordinary" meaning (*Feder v. Luster* (1973), 54 Ill. 2d 6, 11), adopteds would not take under the trust. However, the 1989 statute changed the prism through which we must examine the trust's language.

The trust's use of the terms "descendants" and *"per stirpes"* does not convince me that the settlor even considered the question of adopted heirs, much less convince me that he intended to exclude them. The majority does not give the 1989 statute its intended effect and, in fact, renders it a nullity by making the "clear and convincing evidence" test and the "plain and ordinary language" test indistinguishable.

Contrary to the majority's inferences, I do not believe that the settlor would have to have said "I intend to exclude adopteds" in order to do so, although that might have been the best course. The term "blood descendants" would have met the test of the 1989 statute.

The 1989 statute changed the rules of the game in significant fashion. The majority refuses to give the statute its full effect, and for this reason, I dissent.