(No. 77443)

# THE FIRST NATIONAL BANK OF CHICAGO v. NARCISSA SWIFT KING et al. (Nathan B. Swift, Jr., et al., Appellants; Martha Herriott Swift et al., Appellees).

*Opinion filed March 23, 1995.—Rehearing denied May 30, 1995.*

HEIPLE, J., joined by BILANDIC, C.J., and MILLER, J., dissenting.

Russell M. Pelton and Lois K. Winston, of Oppenheimer, Wolff & Donnelly, of Chicago, for appellants.

William G. Myers and Alan S. Madans, of Rothschild, Barry & Myers, of Chicago, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

The issue in this case is whether section 2—4(f) of the Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110$^1$/$_2$, par. 2—4(f)) should be construed to permit the adopted child of a testator's grandson to receive proceeds from a trust created by a will executed in 1936 under which the class of beneficiaries was limited to the "lawful descendants" of the testator's son and daughter-in-law.

The circuit court answered this question in the negative, holding that the presumption created by the statute in favor of adopted children cannot be applied here because "[t]he intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence." (Ill. Rev. Stat. 1989, ch. 110$^1$/$_2$, par. 2—4(f)(1).) Following the analysis advanced by Justice Inglis in his dissenting opinion in *Continental Bank, N.A. v. Herguth* (1993), 248 Ill. App. 3d 292, 300-01 (Inglis, P.J., dissenting), the appellate court subsequently reversed and remanded for further proceedings. (263 Ill. App. 3d 813.) The appellees in the appellate court then applied for a certificate of importance pursuant to Rule 316 (134 Ill. 2d R. 316). That application was granted, and the matter is now before us for review.

At the center of this dispute is the will left by Louis F. Swift, Sr., who died in 1937. Dated December 11, 1936, the will created three separate trust funds: one named for Swift's son Louis F. Swift, Jr.; a second named for his daughter Idamay Swift Minotto; and a third named for his daughter-in-law Lydia Niblack Swift. The Lydia Niblack Swift Fund (LNS Fund) is the one that concerns us on this appeal.

In section 10 of his will, Swift provided:

"After the creation of the [LNS Fund], I direct that my trustee shall pay in quarter-yearly installments the net income from said Fund to my said daughter-in-law, Lydia Niblack Swift, during her natural life, if she shall be then surviving; provided, however, that if my said daughter-in-law, Lydia Niblack Swift, shall die after the creation, but before the termination, of said [LNS Fund], or if my said daughter-in-law, Lydia Niblack Swift, shall not survive me, the net income of said [LNS Fund] shall be paid in quarter-yearly installments to the lawful descendants, then surviving, in equal shares per stirpes, of my deceased son, Alden B. Swift, and said Lydia Niblack Swift."

In section 11 of his will, Swift further provided that upon termination of the LNS Fund, the corpus of the trust was to be distributed to Lydia Niblack Swift "if she shall be then surviving, or, if she be then deceased, in equal shares per stirpes, to the lawful descendants then surviving of my deceased son, Alden B. Swift, and said Lydia Niblack Swift."

Alden B. Swift and Lydia Niblack Swift had three children, Lydia, Nathan, and Narcissa. Lydia and Narcissa survived their mother. Although Nathan predeceased her, he left behind a son, Nathan Jr. and a daughter, Martha. Nathan Jr. was his biological child. Martha was not. She was the biological child of Nathan Jr.'s mother, who was Nathan Sr.'s second wife. Nathan Sr. adopted Martha after he married her mother. Both Nathan Jr. and Martha survived Lydia Niblack Swift, and both are alive today.

The LNS Fund has not been terminated and is still in existence. Lydia Niblack Swift received all of the income from the Fund until her death in 1968. After that, her two surviving children, Lydia and Narcissa, each became entitled to one third of the Fund's income. The remaining third, which would have been payable to Nathan Sr. had he survived his mother, was paid instead to Nathan's son, Nathan Jr. Because Martha was adopted, the trustee took the position that she was not a "descendant" of Alden B. and Lydia Niblack Swift within the meaning of the testamentary trust. The trustee therefore paid her nothing, and she claimed no share of the Fund's income.

The situation changed with enactment of the 1989 revisions to section 2—4 of the Probate Act (Ill. Rev. Stat. 1989, ch. 110¹/₂, par. 2—4). Those revisions added a new subsection (f), which provides:

> "After September 30, 1989, a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument executed before September 1, 1955, unless one or more of the following conditions applies:
>
> (1) The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence.
>
> (2) An adopting parent of an adopted child, in the belief that the adopted child would not take property under an instrument executed before September 1, 1955, acted to substantially benefit such adopted child when compared to the benefits conferred by such parent on the child or children born to the adopting parent." (Ill. Rev. Stat. 1989, ch. 110¹/₂, par. 2—4(f).)

Identical provisions were also codified under section 1(b) of the Instruments Regarding Adopted Children Act (Ill. Rev. Stat. 1989, ch. 40, par. 1652(b)).

Following enactment of section 2—4(f), Martha requested that the First National Bank of Chicago,

trustee of the LNS Fund, begin treating her as a beneficiary of the Fund. The trust responded by filing an action for declaratory judgment (Ill. Rev. Stat. 1989, ch. 110, par. 2—701) in the circuit court of Cook County to construe the terms of the LNS Fund in light of section 2—4(f) and to determine whether Martha should, in fact, be treated as a beneficiary. Martha counterclaimed, contending that the statute is constitutional and that it entitles her to share in the income of the Fund as a beneficiary. In the alternative, she alleged that she should be deemed a beneficiary of the Fund under common law principles.

Nathan Jr. and his son, Nathan Swift IV, both of whom had been named as defendants, filed a motion under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), to dismiss the complaint and those portions of the counterclaim based on section 2—4(f). The two Nathans asserted that the statute is unconstitutional. In the alternative, they contended that even if the statute is valid, the statutory presumption cannot be extended to Martha because the testator's intent to exclude her "is demonstrated by the terms of the instrument by clear and convincing evidence" as set forth in section 2—4(f)(1).

Martha moved for partial summary judgment (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005), asserting that section 2—4(f) is constitutional and that the exception created by section 2—4(f)(1) is inapplicable because the terms of the will do not demonstrate by clear and convincing evidence any intent by her grandfather to exclude her as a beneficiary of the trust. Treating the Nathans' motion to dismiss as a motion for partial summary judgment, the circuit court ruled in their favor and denied the cross-motion for partial summary judgment filed by Martha. In doing so, the court agreed with the Nathans that the exception created by section

2—4(f)(1) is applicable, holding that the terms of the will do "demonstrate[ ] clear and convincing evidence of an intent to exclude adopted children as beneficiaries." That being so, the statute could not be invoked by Martha in support of her claim to a share of the LNS Fund. As a result, the court reasoned that it had no need to reach the Nathans' alternative argument that the statute is unconstitutional.

Although the circuit court's order left unresolved Martha's claim that she should be treated as a beneficiary under common law principles independent of the statute, the court made an express written finding that there was no just reason for delaying enforcement or appeal. Martha appealed (134 Ill. 2d R. 304(a)) along with her son John, who was a nominal defendant in the circuit court proceedings. As previously noted, the appellate court reversed and remanded, concluding that Martha is entitled to avail herself of the presumption created by section 2—4(f) of the Probate Act and that the statute is not unconstitutional. The appellate court then granted a certificate of importance pursuant to Rule 316 (134 Ill. 2d R. 316), bringing the matter before us for review.

The parties agree that section 2—4(f) expands a statutory presumption, applicable to the determination of property rights under written instruments, that no distinction is to be drawn between adopted children and natural offspring. (See *Schuttler v. Ruark* (1992), 225 Ill. App. 3d 678, 683-84.) Under the statute, a testator is presumed to have intended for children adopted by their parents to be treated just as if they had been born to them. Previously, that presumption applied only to the construction of instruments executed on or after September 1, 1955. (See Ill. Rev. Stat. 1987, ch. 110 1/2, par. 2—4(e).) Section 2—4(f) now extends it to also embrace instruments, such as Louis Swift's will, executed before September 1, 1955.

If section 2—4(f)'s presumption applies, Martha is unquestionably entitled to be treated as a beneficiary of the LNS Fund, just as her half-brother, Nathan Jr., is. The dispute here has arisen because that presumption is not conclusive. As suggested earlier in this opinion, it can be rebutted where "[t]he intent to exclude [the adopted] child is demonstrated by the terms of the instrument by clear and convincing evidence." Ill. Rev. Stat. 1989, ch. 110$^1$/$_2$, par. 2—4(f)(1).

The two Nathans assert that this standard has been satisfied here because sections 10 and 11 of the will specify that money from the LNS Fund is to be paid to the "lawful descendants" of Alden B. Swift and Lydia Niblack Swift, in equal shares *"per stirpes."* The ultimate question for us to resolve then is whether the terms "lawful descendants" and *"per stirpes"* in a document executed prior to 1955 are sufficient, by themselves, to demonstrate by clear and convincing evidence an intent to exclude adopteds.

This issue was addressed by the appellate court in *Continental Bank, N.A. v. Herguth* (1993), 248 Ill. App. 3d 292. There, the court reviewed the law in effect in 1926, when the settlor created the trust involved in that case, and concluded that the term "descendants" had a definite and certain meaning that encompassed only blood offspring. The court further held that the method of distribution provided by the settlor—*per stirpes*—automatically disqualified adopted persons under the then-existing law. Because the settlor is presumed to have known these legal principles when he executed the trust, the court reasoned that his use of the terms "descendant" and *"per stirpes"* "unmistakably evidenced his [actual] intent to limit the class of beneficiaries to his natural born progeny" and to exclude adopteds. (*Continental Bank*, 248 Ill. App. 3d at 296.) Because the

settlor's actual intent was clear, the court concluded that the presumption created by section 2—4(f) was inapplicable, and that adopted heirs could not take under the trust.

Justice Inglis dissented. He agreed that the term "descendants" did ordinarily mean only blood relatives when the trust was executed in 1926. Nevertheless, while terms used in a trust are to be given their plain and ordinary meaning, Justice Inglis opined that the "plain and ordinary language" test must be distinguished from the "clear and convincing evidence" test set forth in section 2—4(f)(1). Otherwise, section 2—4(f) would be rendered a nullity. In Inglis' view, the settlor's use of the terms "descendants" and "*per stirpes*" in the trust does not demonstrate that he even considered the question of adopted heirs, much less that he intended to exclude them. Accordingly, Inglis would have applied the statutory presumption created by section 2—4(f) and held that the adopted heirs were entitled to share in the trust. *Continental Bank,* 248 Ill. App. 3d at 300-01 (Inglis, P.J., dissenting).

In the case before us, the appellate court agreed with Justice Inglis' analysis and declined to adopt the holding of the *Continental Bank* majority. The court held that the meaning ordinarily ascribed to the term "descendant" under the old law was, itself, merely a presumption. It did nothing more than provide a rule of construction where the testator's actual intent was unknown, just as the new presumption established by section 2—4(f) does. Accordingly, the court declared that the use of the term "descendant," standing alone, cannot be regarded as clear and convincing evidence of an intent to exclude adopted heirs. There must be something more in the terms of the instrument itself to demonstrate, at a minimum, that the testator actually

considered the contingency of adoption. 263 Ill. App. 3d at 820-22.

In this case, the appellate court concluded that there was nothing else to suggest an intention to exclude adopted children. To the contrary, the court observed that if anything, the other terms of the will, which include substantial provision for nonblood relations, "constitute[ ] persuasive evidence that the testator would be just as willing to allow his grandson's adopted child to share in his bounty." 263 Ill. App. 3d at 826.

Although the testator did use the term *"per stirpes"* in the trust, the appellate court rejected the argument that this evinced an intention to exclude adopted children. The court acknowledged that the Adoption Act of 1874 prohibited adopted children from inheriting property "from the lineal or collateral kindred of such [adoptive] parents by right of representation" (Ill. Rev. Stat. 1931, ch. 4, par. 5) and that "by right of representation" was the same as *"per stirpes."* The court held, however, that the Adoption Act's prohibition applied only where the adopted child sought to inherit an *intestate* share from someone other than the adoptive parents. It is inapplicable where, as here, the adopted child seeks to take pursuant to the terms of a written instrument. 263 Ill. App. 3d at 826, citing *In re Estate of Dawson* (1988), 168 Ill. App. 3d 391, 395-96.

We believe that the approach taken by the appellate court in this case is the better-reasoned one and should prevail over the analysis adopted by the majority in *Continental Bank*, 248 Ill. App. 3d 292. As a result, we agree with the appellate court's conclusion that the testator's use of the terms "lawful descendants" and *"per stirpes"* is not sufficient to demonstrate by clear and convincing evidence that he intended to exclude adopted children such as Martha. The exception set forth in section 2—4(f)(1) of the Probate Act is therefore

inapplicable, and the presumption in favor of adopteds established by section 2—4(f) of the Act must be given effect. Accordingly, Martha is entitled to be treated as a beneficiary of the LNS Fund.

The two Nathans argue that application of section 2—4(f)'s presumption under the facts present here violates the doctrine of separation of powers and infringes Nathan Jr.'s due process rights. We disagree. As the appellate court indicated in *Schuttler*, 225 Ill. App. 3d at 684, section 2—4(f) did not effect a change in substantive law. It merely expanded the evidentiary presumption that an adopted child is a natural child, so that the presumption now applies to all documents, regardless of whether they were drafted before or after September 1, 1955.

The legislature has the power to prescribe new rules of evidence and alter existing ones, and to prescribe methods of proof. Such action does not offend the separation-of-powers clause of our constitution. (*People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 140.) Although the legislature cannot declare what shall be conclusive evidence (*Morrison v. Flowers* (1923), 308 Ill. 189, 194), the statute here does not purport to do so. It merely establishes a presumption which can be rebutted. See *Schuttler*, 225 Ill. App. 3d at 684.

With respect to the question of due process, Nathan Jr. asserts that the statute is invalid because it defeats his settled expectations and those of his great-grandfather. We note, however, that rules of evidence such as this are procedural in nature (see *Schuttler*, 225 Ill. App. 3d at 684), and no one has a vested right in any particular mode of procedure (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 391). Accordingly, rules of procedure, including rebuttable presumptions, may be changed by the legislature and applied retroac-

tively, unless there is a savings clause as to existing litigation, without offending any constitutional prohibition. (*Maiter*, 82 Ill. 2d at 390; *Illinois Public Aid Comm'n v. Brauer* (1957), 11 Ill. 2d 416, 419.) The Nathans' constitutional challenge must therefore be rejected.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE HEIPLE, dissenting:

In 1936, Louis F. Swift executed his will. After his death in 1937, his daughter-in-law, Lydia Niblack Swift, became the life income recipient of the Lydia Niblack Swift Fund established by the will. The will further provided that, upon Lydia's death, income from the fund was to become payable to her lawful descendants *per stirpes* until the last such descendant had died.

Lydia died in 1968. Since one of Lydia's three children, Nathan Swift, Sr., had predeceased her, that portion of the trust fund income was paid to his biological son, Nathan Swift, Jr. Even though Nathan Sr. also had an adopted daughter, Martha Herriot Swift, the trustee determined that she was not a lawful descendant within the meaning of the will. At that time, Martha made no claim to a share of the trust's income.

Twenty-one years later, in 1989, the General Assembly passed an amendment to the Instruments Regarding Adopted Children Act which allowed adopted children to participate as blood relatives under certain written instruments executed prior to September 1, 1955. The statute provides:

"After September 30, 1989, a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument executed before September 1, 1955, unless ***

(1) The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence." (760 ILCS 30/1(b)(1) (West 1992).)

(See also 755 ILCS 5/2—4(f)(1) (West 1992).) Pursuant to this amendment, Martha claimed an entitlement to a portion of the trust income which Nathan Swift, Jr., had received since 1968.

When Louis Swift executed his will in 1936, settled Illinois law established that the use of "descendants" and "*per stirpes*" excluded adopted children as takers in written instruments. (*See Continental Bank, N.A. v. Herguth* (1993), 248 Ill. App. 3d 292, 296-99.) Although the majority disputes the established meaning of *per stirpes* in 1936 (165 Ill. 2d at 541), it does not seriously dispute that the term lawful descendants excluded adopted children. (165 Ill. 2d at 540.) However, the majority argues that the term lawful descendant under the old law merely created a presumption of an intent to exclude adopteds. (165 Ill. 2d at 540.) Therefore, the majority concludes that Swift's use of this language, standing alone, cannot be regarded as clear and convincing evidence of his intent to exclude adopteds, and the statute is therefore applicable. (165 Ill. 2d at 541-42.) I disagree.

The fundamental tenet of will construction is to give effect to the intent of the testator. (*Harris Trust & Savings Bank v. Beach* (1987), 118 Ill. 2d 1, 3.) A court determines such intention from the terms of the instrument, by giving words employed their plain and ordinary meaning. *Harris Trust & Savings Bank v. Donovan* (1991), 145 Ill. 2d 166, 172.

We must charge Louis F. Swift with knowledge of the then existing law concerning the disposition of his property when he executed his will, and we must determine his intentions by the plain and ordinary meaning of the language he used in his will. Swift's use

of the terms "lawful descendants" and *"per stirpes"* indicates his actual intention to exclude adopteds, not, as the majority suggests, a mere presumption of his intention.

This is basic testamentary construction, and is the only analysis relevant or necessary in the present case. New legislation cannot legitimately be used to retroactively rewrite the substantive provisions of a will. When Louis F. Swift executed his will in 1936, he was entitled to use and rely on words that had a definite, known, and accepted legal meaning.

In addition to writing a new will for Louis Swift nearly 60 years after his death, the majority's analysis also violates Nathan Jr.'s due process rights. Nathan Jr.'s property rights under the will vested decades before the legislature adopted the amendment in 1989. Changes in procedure will not be applied retroactively where vested rights will be defeated by such application. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373.) Nathan Jr. is entitled to the continued enjoyment of the income stream from the testamentary trust. Contrary to the majority's assertion, the amendment does not merely effectuate some theoretical change in evidentiary procedure. (165 Ill. 2d at 542-43.) Rather, it permits Martha to seize half the income Nathan Jr. receives from the trust.

Citizens are entitled to reliability and consistency in the meaning of the law. Retroactive statutes are disfavored, among other reasons, precisely because of their potential to interfere with these settled expectations. In upholding the applicability of the statute at issue, the majority has undermined a testator's right to plan his estate on the basis of known and existing law. Moreover, it has encouraged the legislature, under the guise of procedural change, to retroactively interfere with substantive rights under the impetus of an evolv-

ing and ever changing public policy. Accordingly, I respectfully dissent.

CHIEF JUSTICE BILANDIC and JUSTICE MILLER join in this dissent.